**IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **DENNIS HILDERBRAND,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 13-3170 |
| | ) | |
| **NATIONAL ELECTRICAL BENEFIT** | ) | |
| **FUND,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

Plaintiff Dennis Hilderbrand challenges the National Electrical Benefit Fund's (NEBF) decision to deny him disability benefits for the period of March 2005 through October 2008.  Cross motions for summary judgment are pending.  Because the NEBF Trustees failed to consider reliable, contrary evidence submitted by Hilderbrand, Hilderbrand's Motion for Summary Judgment (d/e 12) is GRANTED IN PART and the cause is remanded to the NEBF Trustees for a de novo benefits determination.  The NEBF's Motion for Summary Judgment (d/e 13) is DENIED.

# I. FACTS

The facts are largely undisputed. The NEBF is a multiemployer employee pension benefit plan within the meaning of Section 3(2) of the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1002(2)). NEBF's Statement of Undisputed Fact No. 1. The NEBF was established pursuant to an agreement entered into between the International Brotherhood of Electrical Workers and the National Electrical Contractors Association for the purpose of providing retirement benefits to participants upon their retirement from the electrical industry. Id. The NEBF is governed by the Plan of Benefits for the NEBF (Plan). Id. at 2. Hilderbrand is a participant in the NEBF by virtue of the work he performed in covered employment and is 100% vested. Id. at 4.

On October 9, 2002, Hilderbrand (d/o/b October 22, 1958) was injured at work while operating a piece of machinery. See, e.g., Administrative Record at 60 (d/e 15) (hereinafter cited as "R." and the page number of the Administrative Record). Hilderbrand suffered lacerations on his lower right leg. Id. The lacerations

were repaired, but Hilderbrand continued to experience pain in his lower leg.  Id.

In November 2004, Hilderbrand had surgery on his leg to release the right peroneal nerve.  R. 199.  The surgery was performed by Dr. Susan Mackinnon, Shoenberg Professor and Chief, Division of Plastic and Reconstructive Surgery, Washington University.  Id.  Although Dr. Mackinnon was optimistic that the surgery would relieve Hilderbrand's pain, Hilderbrand continued to experience significant pain.  Hilderbrand sought treatment at the Washington University Pain Management Center with Dr. Mohammad Munir and then, after Dr. Munir left, with Dr. Robert A. Swarm.  Hilderbrand tried IV lidocaine, right lumbar sympathetic block, and radiofrequency ablation of the lumber sympathetic nerve.  See, e.g., R. 221, 224, 226, 229, 232, 234, and 236.  Nothing provided him long-term pain relief.

In June and November 2006, Dr. Swarm restricted Hilderbrand to light duty, sedentary work with allowances for elevation of his right lower leg.  R. 85, 91.  Dr. Swarm found Hilderbrand was able to stand for a maximum of 15 minutes total

every two hours.  Id.  Walking was limited to a maximum of 40 yards on a rare basis and required the use of a cane.  Id.

On April 18, 2007, Administrative Law Judge Alice Jordan found Hilderbrand "disabled" within the meaning of the Social Security Act from October 9, 2002 through December 8, 2004.[1]  R. 91-111.  ALJ Jordan found that, on December 9, 2004, medical improvement occurred, and Hilderbrand was able to perform substantial gainful activity from December 9, 2004 through the date of the decision.

Specifically, ALJ Jordan found that, beginning December 9, 2004, Hilderbrand had the residual functional capacity to perform work that: required the ability to lift or carry up to 10 pounds occasionally or frequently and that accommodated the use of a hand-held device (a cane) for assistance with ambulation; allowed sitting for 6 to 8 hours with the accommodation to elevate the leg as needed; required no more than 2 hours of standing or walking with the use of a hand-held device; required no climbing or crawling, and only occasional balancing, crouching, or kneeling; and required no exposure to hazards.  R. 105.

_____

[1] Hilderbrand had filed his application on March 29, 2004.  R. 97.

In making the residual functional capacity determination, ALJ Jordan considered medical records as recent as November 27, 2006, as well as Hilderbrand's testimony at the hearing that he thought he could work if his needs, including elevating his leg, were accommodated.  R. 106-09.  The ALJ noted that Hilderbrand could not perform the full range of sedentary work.  R. 110. Therefore, the ALJ asked the vocational expert whether jobs existed in the national economy for a person with claimant's age, education, work experience, and residual functional capacity as of December 9, 2004.  Id.  The vocational expert testified that such jobs existed in significant numbers in the national economy.  Id. Therefore, the ALJ found Hilderbrand "not disabled" as of December 9, 2004.  R. 111.

Hilderbrand continued to receive medical treatment for his pain.  In January 2008, Hilderbrand consulted with Dr. Jacques VanRyn, M.D. of Premier Care Orthopedics.  R. 238-40.  Dr. VanRyn examined Hilderbrand and reviewed Hilderbrand's medical records.  Dr. VanRyn diagnosed Hilderbrand with complex regional pain syndrome and found Hilderbrand had reached maximum medical improvement.  Like Dr. Swarm, Dr. VanRyn found

Hilderbrand had permanent restrictions of sedentary work only: "standing for a maximum of 15 minutes/two hours, or one hour per day"; walking limited to a maximum of 40 yards on an infrequent basis, with the use of a cane; and the ability while sitting to elevate his right leg. R. 240. In addition, Dr. VanRyn noted that re-education toward a job that Hilderbrand could do on a sedentary basis would be necessary. Id.

On December 2, 2008, ALJ John Dodson found Hilderbrand disabled under sections 216(i) and 223(d) of the Social Security Act since October 21, 2008.[2] R. 177-81. ALJ Dodson found no basis for reopening Hilderbrand's prior application. R. 177. Moreover, the decision indicated that Hilderbrand had amended the alleged onset date of disability to October 21, 2008 (the day before Hilderbrand's 50th birthday). R. 177.

ALJ Dodson found that Hilderbrand had the residual functional capacity to perform sedentary work except that he was limited to work that accommodated the use of a hand-held device for assistance with ambulation. R. 179. In addition, the work should: allow sitting for 6 to 8 hours with accommodation to

---

[2] Hilderbrand had filed his application on July 30, 2007. R. 181.

elevate the leg as needed[3]; require no more than 2 hours of standing or walking with the use of a hand-held device; require no climbing or crawling and only occasional balancing, crouching, and kneeling; and require no exposure to hazards.  R. 179. Hilderbrand could not perform his past relevant work.  ALJ Dodson found, considering Hilderbrand's age, education, work experience, and residual functional capacity, that there were no jobs that existed in significant numbers in the national economy that Hilderbrand could perform.  R. 180.

Specifically, ALJ Dodson examined the Medical-Vocational Guideline (20 C.F.R. Part 404, Subpart P, Appendix 2 (a/k/a "the Grid") which directed a finding of "disabled" even if Hilderbrand could have performed the full range of sedentary work.  R. 180.

Taking into account the two Social Security decisions, Hilderbrand received social security benefits beginning April 2003 and ending March 2005 (R. 12) and again beginning November 2008 (R. 31).

-------

[3] ALJ Jordan and ALJ Dodson both mistakenly refer to Hilderbrand needing to elevate his <u>left</u> leg. R. 105, 179.

In January 2012, Hilderbrand completed an NEBF

Participant Pension Benefit Application seeking disability benefits.

R. 1.  The Plan defines disability as follows:

> To be entitled to a Disability Pension Benefit, a
> Participant must be unable to engage in any substantial
> gainful activity by reason of any medically determinable
> physical or mental impairment which can be expected to
> result in death or has lasted or can be expected to last
> for a continuous period of not less than twelve (12)
> months[.]

R. 334.  This is the same definition used by the Social Security

Administration.  <u>See</u>, <u>e.g.</u>, R. 115, 158.  The Plan further provides:

> Proof of such disability must be filed with the NEBF and
> shall consist of a Social Security Disability Award or
> such other proof as the Trustees may require.

R. 334.

In March 2012, the NEBF approved Hilderbrand's application

for disability benefits in part.  R. 53.  The NEBF awarded

Hilderbrand benefits of $640 per month (minus tax withholding)

beginning in March 2012.  The NEBF also found Hilderbrand was

entitled to a retroactive payment for November 2002 through

February 2012.  However, the years 2005 and 2008 remained

under review.

In July 2012, counsel for Hilderbrand treated the March 2012 determination as a denial of benefits for the period of March 2005 through October 2008 and asked for a review of that decision. <u>See</u> R. 57, 124, 190. On September 14, 2012, the NEBF denied the request for benefits for March 2005 through October 2008:

> We reviewed the additional documentation that you sent in from your Attorney. The NEBF's disability benefit is based on the Social Security Disability Award. Therefore, if they did not pay you for those years in question (March 2005 through October 2008) the NEBF is not required to pay you. Enclosed is a copy of the NEBF Summary Plan Description.
>
> If you disagree with our decision or believe our records are incomplete or incorrect, you may appeal this decision within one hundred and eighty (180) calendar days from the date of this letter. Please direct your appeal to:
>
> Trustees<br>National Electrical Benefit Fund<br>2400 Research Boulevard, Suite 500<br>Rockville, Maryland 20850-3266
>
> Remember to include copies of all documents and information pertinent to your case.

R. 127.

Hilderbrand appealed and submitted additional information. <u>See</u> R. 128, 131-271. The additional information included a December 28, 2012 Vocational Consultant Report by Bob

Hammond prepared at Hilderbrand's request.  R. 265.[4]  In the report, Hammond reviewed the medical and employment information and concluded that Hilderbrand would be unable to work even in a sedentary position.  Hammond noted that all of the doctors agreed that Hilderbrand needed to use a cane 90% of the time; that his maximum walking distance was 40 yards on a rare basis; that Hilderbrand was limited to sedentary work that allowed Hilderbrand to elevate his right leg; and that Hilderbrand could stand for a maximum of 15 minutes every two hours.  R. 268.

Hammond noted that Hilderbrand had to be in a seated position and elevate his right leg as needed.  Hammond stated:

> It is suggested the elevation would be above the level an employer would tolerate.  Mr. Hilderbrand would not be able to maintain work pace and persistency that an employer would tolerate.  He would be at a distance or an angle at a distance from his work station and would not be able to meet production goals.  He is also reported to have concentration issues, and this also would reduce his productivity rate and he would not be able to meet the 94-95% productivity rate needed for substantial gainful activity.  SSA-ODAR[5] correctly defined Mr. Hilderbrand as disabled from all work.

---

[4] The Report sometimes references a "Mr. Dye" instead of Mr. Hilderbrand. This is apparently a typographical error.
[5] Social Security's Office of Disability Adjudication and Review.

R. 268-69. Hammond concluded that Hilderbrand had less than sedentary ability, which would eliminate all positions in the general labor market. R. 269.

On February 8, 2013, the NEBF Trustees denied the appeal. R. 281-82. The NEBF Trustees noted that Hilderbrand must demonstrate total disability under the NEBF's definition of disability, which was the same as the Social Security Administration's definition of disability. R. 281. The Trustees held:

> The Social Security Administration affirmatively determined that Mr. Hilde[r]brand was not totally disabled under its definition during the period March 2005 to October 2008, and he had a disability onset date of October 21, 2008. Mr. Hilde[r]brand is therefore not eligible for disability benefits from the NEBF for the period March 2005 to October 2008.

R. 281-82.

The Trustees also referenced several physician findings cited by Hilderbrand in his appeal. The Trustees noted that while Hilderbrand's physicians restricted Hilderbrand to light duty, sedentary work that allowed for the elevation of his right leg, none of the physicians stated Hilderbrand was unable to work. R. 282. In addition, the Trustees noted that the Social Security

Administration did not find Hilderbrand totally disabled prior to October 21, 2008.  Id.  Therefore, the NEBF Trustees affirmed the prior denial of Hilderbrand's application for a disability pension from March 2005 through October 2008.  Id.

On June 7, 2013, Hilderbrand filed his Complaint seeking benefits pursuant to ERISA (29 U.S.C. § 1132(a)(1)(B)). Hilderbrand alleged the NEBF arbitrarily and capriciously denied him benefits and a full and fair review of his claim.  Compl., ¶ 18 (d/e 1).  Cross-motions for summary judgment are pending.  See d/e 12, 13.

In his Motion for Summary Judgment, Hilderbrand primarily asserts that the NEBF erred by failing to conduct a medical/vocational analysis of Hilderbrand's ability to perform work and arbitrarily and capriciously denied his claim based on incomplete medical records.  Pl.'s Mot., p. 2 (d/e 12); see also p. 10 (asserting that NEBF failed to address Hammond's report)  In his response to the NEBF's Motion for Summary Judgment, Hilderbrand also notes that the NEBF failed to explain and address its reasons for rejecting Hammond's report.  Pl.'s Resp., p. 4 (d/e

18).  Hilderbrand asks that the Court reverse the NEBF finding or remand for evidentiary consideration of the medical evidence.

In its Motion for Summary Judgment, the NEBF asserts that based on the evidence, the decision to deny Hilderbrand's claim for benefits was not arbitrary and capricious.

## II. LEGAL STANDARD

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the court of the basis for the motion and identifying the evidence the movant believes demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  No genuine issue of material fact exists if a reasonable jury could not find in favor of the nonmoving party.  Brewer v. Bd. of Trs. of the Univ. of Ill., 479 F.3d 908, 915 (7th Cir. 2007).  When ruling on a motion for summary judgment, the court must consider the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor.  Woodruff v. Mason, 542 F.3d 545, 550 (7th Cir. 2008).

## III. ERISA STANDARD OF REVIEW

A district court reviews an ERISA administrator's benefit determination <u>de</u> <u>novo</u> "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989). If the benefit plan gives the administrator or fiduciary such discretion, the district court reviews the decision under the arbitrary and capricious standard. <u>Id.</u>; <u>see</u> <u>also</u> <u>Jenkins v. Price Waterhouse Long Term Disability Plan</u>, 564 F.3d 856, 861 (7th Cir. 2009).

In this case, the Plan gives the Trustees discretionary authority to interpret the Plan's provisions and review claims:

> 20. <u>CONSTRUCTION AND DETERMINATIONS WITH REGARD TO PLAN</u>. The Trustees shall have full discretionary power and authority to construe and interpret the provisions of this Plan, the terms used herein, and the rules, regulations, and policies related thereto. The Trustees shall have full, discretionary, and exclusive power and authority to administer the plan and to determine all questions of coverage and eligibility, methods of providing or arranging for the benefits specified in this Plan and all other related matters. Pension benefits under this Plan will be paid only if the Trustees decide in their discretion that applicant is entitled to them.

R. 353.  Therefore, the arbitrary and capricious standard applies.

Under the arbitrary and capricious standard, the district court will not overturn an administrator's decision unless the decision is "downright unreasonable."  Mote v. Aetna Life Ins. Co., 502 F.3d 601, 606 (7th Cir. 2007) (citations and quotations omitted).  The decision must have rational support in the record.  Black v. Long Term Disability Ins., 582 F.3d 738, 745 (7th Cir. 2009) (also noting that the standard is not a "rubber stamp").  Moreover, the determination must comply with the ERISA requirement the claimant be given specific reasons for the denial and an opportunity for a full and fair review.  Fischer v. Liberty Life Assurance Co. of Boston, 576 F.3d 369, 376 (7th Cir. 2009); see also Sisto v. Ameritech Sickness & Accident Disability Benefit Plan, 429 F.3d 698, 700 (7th Cir.2005) (noting that the court will uphold the plan's decision if it is possible to offer a reasoned explanation, the decision is based on a reasonable explanation of the plan documents, or the decision is based on a consideration of the relevant factors).

Hilderbrand argues, in his response to the NEBF's Motion for Summary Judgment, that de novo review is appropriate because the plan administrator had a conflict of interest. Specifically, Hilderbrand asserts that the "Plan Administrator stands to benefit from the retention of funds by denying the Plaintiff benefits." See Resp., p. 2 (d/e 18). The NEBF did not file a reply.

A conflict of interest exists when the plan administrator has the "discretionary authority to determine eligibility for benefits and the obligation to pay benefits when due." Jenkins, 564 F.3d at 861; Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008) (finding a conflict of interest exists when the entity that administers the plan decides eligibility for benefits and "pays benefits out of its own pocket"). When a conflict of interest exists, the standard of review remains the same, but the conflict is a factor that must be weighed when determining whether the decision was arbitrary and capricious. Id. (also noting that a conflict of interest may break a tie in a close case). The Seventh Circuit has recognized that a conflict of interest exists in most ERISA cases, and, therefore, it is not the existence of the conflict of interest but the gravity of the conflict that matters. Marrs v.

Motorola, Inc., 577 F.3d 783, 788 (7th Cir. 2009) (finding that the "likelihood that the conflict of interest influenced the decision is therefore the decisive consideration"); Boxell v. Plan for Group Ins. of Verizon Commc'ns, Inc., -- F. Supp. 3d ---, No. 1:13-cf-89, 2014 WL 4772659 (N.D. Ind. Sept. 22, 2014) (finding that the claims administrator who made the claims decision did not have a financial interest in the outcome of the claims because the claims administrator neither funded nor insured the plan; benefits were paid from self-insured trust accounts that were funded with employee and employer contributions).

The NEBF did not file a reply and has not addressed the conflict of interest issue. Hilderbrand did not provide the Court with any evidence to support a finding that the NEBF had a conflict of interest. In any event, even assuming no conflict of interest exists in this case, the Court finds that remand is warranted because the NEBF failed to afford Hilderbrand a full and fair review.

## IV. ANALYSIS

ERISA imposes on pension plans certain requirements relating to participation (i.e. age, length of service), funding, and

vesting, and establishes uniform procedural standards regarding reporting, disclosure, and fiduciary responsibility. <u>Metro. Life Ins. Co. v. Mass.</u>, 471 U.S. 724, 732 (1985) (citing 29 U.S.C. §§1021-31, 1051-86, 1101-14), <u>overruled in part on other grounds by Kentucky Ass'n of Health Plans, Inc. v. Miller</u>, 538 U.S. 329 (2003). ERISA does not "regulate the substantive content of welfare-benefits plans." <u>Metro. Life</u>, 471 U.S. at 732.

In particular, ERISA requires that every employee benefit plan provide notice to a beneficiary that a claim for benefits under the plan has been denied. 29 U.S.C. § 1133(1). The employee benefit plan must also set forth the specific reasons for the denial and afford the participant a reasonable opportunity for a "full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(1), (2). Only substantial compliance with these requirements is necessary. <u>Hackett v. Xerox Corp. Long-Term Disability Income Plan</u>, 315 F.3d 771, 775 (7th Cir. 2003).

In this case, the NEBF, through its Trustees, did not afford Hilderbrand a full and fair review of his claim because the NEBF Trustees did not consider Hammond's vocational report. While the

plan administrator is not required to expressly address each piece of evidence, the administrator must address any reliable, contrary evidence presented by the claimant.  See Love v. Nat'l City Corp. Welfare Benefits Plan, 574 F.3d 392, 397 (7th Cir. 2009) (holding that a plan administrator must address any reliable, contrary evidence); Des Armo v. Kohler Co. Pension Plan, No. 13-C-436, 2014 WL 3860049, at *11 (E.D. Wis. Aug. 6, 2014) (holding that an administrator need not address each piece of evidence).  Moreover, "[a]dministrators may not arbitrarily refuse to credit a claimant's reliable evidence."  Black & Decker Disability Plan v. Nord, 538 U.S. 822, 831 (2003).

Hammond, the vocational expert, concluded that Hilderbrand could not work in even a sedentary capacity because he had to be in a seated position and elevate his right leg. Hammond was of the opinion that the elevation of the leg "would be above the level an employer would tolerate."  R. 268.  Hammond concluded that because Hilderbrand could not perform the full range of sedentary work, all positions in the general labor market were eliminated. The NEBF Trustees did not mention the vocational report in the denial.  In addition, the NEBF did not address the issue in the

Response to Hilderbrand's Motion for Summary Judgment and did not file a Reply in Support of Summary Judgment.

The Court notes that a plan administrator need not discuss evidence that is immaterial to the issues. See, e.g, Jacobs, Jr. v. Guardian Life Ins. Co. of Am., 730 F. Supp. 2d 830, 856 (N.D. Ill. 2010) (finding that the defendants did not need to discuss the evidence submitted by the plaintiff when denying the claim where the evidence did not provide any insight on the relevant issue). However, the NEBF does not even argue that the evidence is immaterial to the issues. Moreover, the seven circuits that have addressed whether administrators must take vocational considerations into account have concluded that "even in the absence of specific plan language, benefit administrators cannot outright ignore vocational considerations." Travis v. Midwest Operating Eng'rs Pension Plan, No. 13 CV 12, 2014 WL 4057372, at *5 (N.D. Ill. Aug. 15, 2014) (citing cases from the First, Second, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits).

Because the NEBF did not substantially comply with the ERISA regulations, the denial of benefits is reversed. It is not clear from the record that Hilderbrand is entitled to benefits because the

evidence is not "so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground." Love, 574 F.3d at 398 (quoting Gallo v. Amoco Corp., 102 F. 3d 918, 923 (7th Cir. 1996)).  Therefore, instead of awarding benefits to Hilderbrand, the Court remands the claim for benefits to the NEBF Trustees for a de novo benefits determination.  Leger v. Tribune Co. Long Term Disability Benefit Plan, 557 F.3d 823, 835 (7th Cir. 2009) (remanding a case for further findings and explanations where the plan failed to consider certain evidence); Kough v. Teamsters' Local 301 Pension Plan, 437 F. App'x 483, 488 (7th Cir. 2011) (providing that an award of benefits, as opposed to a remand, is appropriate only when it is clear from the record that the plaintiff is entitled to benefits).

The Court also notes that it may award attorney's fees and costs so long as Hilderbrand has achieved "some degree of success on the merits." Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 245 (2010); see also 29 U.S.C. § 1132(g)(1).  The parties have not briefed this issue.  Therefore, Hilderbrand may file a Motion for Attorney's Fees on or before January 20, 2015.  The NEBF may file a response on or before February 3, 2015.

# V. CONCLUSION

For the reasons stated, the NEBF's Motion for Summary Judgment (d/e 13) is DENIED and Hilderbrand's Motion for Summary Judgment (d/e 12) is GRANTED IN PART. The denial of benefits is reversed and the claim for benefits is remanded to the NEBF Trustees for a <u>de novo</u> benefits determination consistent with this opinion. Hilderbrand may file a Motion for Attorney's Fees on or before January 20, 2015. The NEBF may file a response on or before February 3, 2015.

 ENTER: December 30, 2014

FOR THE COURT:

<u>    s/Sue E Myerscough</u>
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE